# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

SHIVA STEIN,                                    :
                                                :
          Plaintiff,                    :   Civil Action No. _____
                                                :
v.                                              :   **COMPLAINT FOR VIOLATIONS OF**
                                                :   **SECTIONS 14(a) AND 20(a) OF THE**
CENTERSTATE BANK CORPORATION,                   :   **SECURITIES EXCHANGE ACT OF**
ERNEST S. PINNER, CHARLES W.                    :   **1934**
MCPHERSON, JAMES H. BINGHAM,                    :
MICHAEL J. BROWN SR., CHARLES                   :   **JURY TRIAL DEMANDED**
DENNIS CARLTON, MICHAEL F.                      :
CIFERRI, JOHN C. CORBETT, JODY JEAN             :
DREYER, GRIFFIN A. GREENE, JOHN H.              :
HOLCOMB III, RICHARD MURRAY IV,                 :
GEORGE TIERSO NUNEZ, THOMAS E.                  :
OAKLEY, G. RUFFNER PAGE JR.,                    :
WILLIIAM KNOX POU JR., DANIEL R.                :
RICHEY, DAVID G. SALYERS, JOSHUA A.             :
SNIVELY SR., AND MARK W.                        :
THOMPSON,                                       :
                                                :
          Defendants.                   :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against CenterState Bank Corporation ("CenterState or the "Company") and the members CenterState's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between CenterState and South State Corporation ("South State").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on March 16, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby CenterState will merge with and into South State, resulting with South State surviving the merger (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each CenterState common share issued and outstanding will be converted into the right to receive 0.3001 shares of South State common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked CenterState's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to CenterState's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

### JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1390, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. at 1316.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants transact business in this District. The Merger Agreement contains a choice of law provision statin that the Merger Agreement "shall be governed by and construed in accordance with the laws of the State of Delaware."

### PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of CenterState common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Ernest S. Pinner has served as a member of the Board since 2002 and is currently the Chairman of the Board.

11.     Individual Defendant Charles W. McPherson has served as a member of the Board since 2012 and is the Company's lead independent director and Vice Chairman of the Board.

12.     Individual Defendant James H. Bingham has served as a member of the Board since 1999.

13.     Individual Defendant Michael J Brown, Sr. has served as a member of the Board since 2018.

14.     Individual Defendant C. Dennis Carlton has served as a member of the Board since 2008.

15.     Individual Defendant Michael F. Ciferri has served as a member of the Board since 2014.

16.     Individual Defendant John C. Corbett has served as a member of the Board since May 2011 and is currently the Company's President and Chief Executive Officer.

17.     Individual Defendant Jody Jean Dreyer has served as a member of the Board since 2018.

18.     Individual Defendant Griffin A. Greene has served as a member of the Board since 2012.

19.     Individual Defendant John H. Holcomb, III has served as a member of the Board since 2019.

20.     Individual Defendant Richard Murray, IV has served as a member of the Board since 2019.

21.     Individual Defendant George Tierso Nunez, II has served as a member of the Board since 2004.

22.     Individual Defendant Thomas E. Oakley has served as a member of the Board since 2002.

23.     Individual Defendant G. Ruffner Page, Jr. has served as a member of the Board since 2019.

24.     Individual Defendant William Knox Pou, Jr. has served as a member of the Board since 2012.

25.     Individual Defendant Daniel R. Richey has served as a member of the Board since 2014.

26.     Individual Defendant David G. Salyers has served as a member of the Board since 2017.

27.     Individual Defendant Joshua A. Snively Sr. has served as a member of the Board since 2012.

28.     Individual Defendant Mark W. Thompson has served as a member of the Board since 2017.

29.     Defendant CenterState is incorporated in Florida and maintains its principal offices at 1101 First Street South, Winter Haven, Florida 33880.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "CSFL."

30.     The defendants identified in paragraphs 10-28 are collectively referred to as the "Individual Defendants" or the "Board."

31.     The defendants identified in paragraphs 10-29 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

32.     CenterState operates as the holding company for CenterState Bank, N.A. that provides various consumer and commercial banking services to individuals, businesses, and industries. The Company accepts various deposit products, such as savings, demand, negotiable order of withdrawal, and money market deposit accounts, as well as certificates of deposit and time deposits. Its loan products include real estate loans to individuals and businesses for the purchase, improvement of, or investment in real estate; construction of single-family residential and commercial units; and development of single-family residential building lots. The Company's loan products also comprise commercial loans to small-to-medium sized businesses for working capital, equipment purchases, and various other business purposes; and consumer loans consisting of loans to individuals for various consumer purposes, as well as business purpose loans. It also offers mutual funds, annuities, and other investment products. In addition, the Company sells fixed income securities; and provides hedging, loan brokerage, correspondent bank deposits, safe-keeping, bond accounting, asset/liability consulting, international wires, clearing and corporate checking account, and other correspondent banking related services. As of December 31, 2018, it operated 126 full service banking offices throughout Florida, Georgia, and Alabama; 1 loan production office in Florida; and 1 loan production office in Macon, Georgia. The Company was formerly known as CenterState Banks, Inc. and changed its name to CenterState Bank Corporation in September 2017. CenterState was founded in 1999 and is headquartered in Winter Haven, Florida.

33.     On January 27, 2020, the Company and South State jointly announced the Proposed Transaction:

WINTER HAVEN, Fla. & COLUMBIA, S.C.--(BUSINESS WIRE)--CenterState Bank Corporation (NASDAQ: CSFL) ("CenterState"), the parent company of CenterState Bank, and South State Corporation (NASDAQ: SSB) ("South State"), the parent company of South State Bank, jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals with a total market value of approximately $6 billion to create a leading Southeastern-based regional bank.

Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, CenterState shareholders will receive 0.3001 shares of South State common stock for each share of CenterState common stock they own. CenterState shareholders will own approximately 53% and South State shareholders will own approximately 47% of the combined company.

The combined company will operate under the South State Bank name and will trade under the South State ticker symbol SSB on the Nasdaq stock market. The company will be headquartered in Winter Haven, Florida and will maintain a significant presence in Columbia and Charleston, South Carolina; Charlotte, North Carolina; and Atlanta, Georgia.

Robert R. Hill, Jr., CEO of South State, will serve as Executive Chairman of the combined company. John C. Corbett, CEO of CenterState, will be CEO of the combined company. The Board of Directors of the combined company will consist of sixteen directors evenly split between the two legacy companies.

"We are excited to partner with CenterState," said Robert R. Hill, Jr. "We have great respect for John, the management team and the company CenterState has built. This is a great combination of cultures, which will create tremendous value for our shareholders."

"We have known and admired Robert and his team for over a decade, and we believe our two organizations are an outstanding fit," said John C. Corbett, CEO of CenterState. "Combining these two high-performing teams will allow us to build an even stronger company together."

**Strategically Compelling for Both Organizations**

- Enhanced Scale to Drive Growth – The combined company will be a significant player throughout the Southern market,

with $75 billion in assets. This combination enhances the combined company's ability to invest in advanced technologies and innovation to strengthen its business and create a competitive advantage in a dynamic market environment.

- Enhanced Scale to Drive Growth and Improve Profitability: The pro forma organization, with approximately $34 billion in assets and $26 billion in deposits, combines two high-quality companies with comparable credit and management philosophies.

- Strengthens Both Companies: This merger combines two highly respected management teams operating complementary business lines. It also diversifies the geographies of each company into a contiguous six-state footprint, spanning from Florida to Virginia.

- Combines Two Strong Core Deposit Franchises and High-Quality Loan Portfolios: The combined company will benefit from the combination of two low-cost core-funded deposit bases and high-quality loan portfolios, providing a stable source of funds and customers.

- High-Growth Markets: The organization will have locations in 10 of the 15 fastest growing Metropolitan Statistical Areas (MSAs) in the Southeast and will have a pro forma deposit-weighted population growth of 6%. The combined company will have a presence in seven of the ten most populous markets in the Southeast.

- Experienced and Compatible Management Teams: The management teams of the two companies have extensive experience and operate with very similar philosophies and values. Each management team has successfully completed numerous mergers and acquisitions and the subsequent integrations of systems and teams.

**Financially Attractive Metrics for Shareholders**

- Significant Earnings Per Share Accretion: The transaction is projected to deliver in excess of 20% EPS accretion to South State once cost saves are fully phased in, with minimal tangible book value dilution and a TBVPS earnback period of less than one year.

- Cost Synergies: The companies have identified $80 million in expected annual net cost savings fully phased in by 2022, representing approximately 10% of projected 2020 combined non-interest expenses.

- Leading Pro Forma Profitability: On a pro forma basis, the combined company is expected to deliver robust profitability metrics.

**Executive Leadership**

The merger will combine the executive management teams from both organizations. In addition to Robert Hill, Executive Chairman, and John Corbett, CEO, the executive team of the combined company will include three members from each legacy company.

\* \* \*

The merger is expected to close in the third quarter of 2020, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Transaction Advisors**

Piper Sandler & Co. served as financial advisor to South State, with Wachtell, Lipton, Rosen & Katz serving as legal advisor.

Keefe, Bruyette & Woods, A Stifel Company, served as financial advisor to CenterState, with Davis Polk & Wardwell LLP serving as legal advisor.

\* \* \*

34.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that CenterState's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

35.    On March 16, 2020, CenterState and South State jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement

was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

36.     With respect to KBW's *South State and CenterState Selected Companies Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected comparable companies observed by KBW in the analysis; and (ii) any benchmarking analyses for CenterState and South State in relation to the selected companies analyzed by KBW.

37.     With respect to KBW's *Pro Forma Selected Companies Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected comparable companies observed by KBW in the analysis; and (ii) any benchmarking analyses for CenterState, South State, and the pro forma combined entity in relation to the selected companies analyzed by KBW.

38.     With respect to KBW's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by KBW in its analysis.

39.     With respect to KBW's *Financial Impact Analysis*, the Registration Statement fails to disclose: (i) the closing balance sheet estimates as of June 30, 2020 for South State and

CenterState; and (ii) the pro forma assumptions provided by South State and CenterState managements.

40.     With respect to KBW's *South State Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the ranges of terminal value of South State at the end of the period from January 1, 2020 through December 31, 2024; (ii) the inputs and assumptions underlying the use of the multiple range of 11.0x to 15.0x South State's estimated 2025 earnings; (iii) the inputs and assumptions underlying the discount rates ranging from 7.0% to 11.0%; and (iv) the basis for assuming that South State would maintain a tangible common equity to tangible asset ratio of 8.00% and that South State would retain sufficient earnings to maintain that level.

41.     With respect to KBW's *CenterState Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the estimated excess cash flows that South State could generate over the period from January 1, 2020 through December 31, 2024; (ii) CenterState's implied terminal value at the end of such period; (iii) the inputs and assumptions underlying the use of the multiple range of 11.0 to 15.0x South State's estimated 2025 earnings; (iv) the inputs and assumptions underlying the discount rates ranging from 7.0% to 11.0%; and (v) the basis for assuming that South State would maintain a tangible common equity to tangible asset ratio of 8.00% and that South State would retain sufficient earnings to maintain that level.

42.     With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the estimated excess cash flows that the pro forma combined entity could generate over the period from July 1, 2020 through December 31, 2024; (ii) South State's implied terminal value at the end of such period; (iii) the assumptions underlying the use of the multiple range of 11.0x to 15.0x pro forma combined entity's estimated 2025 earnings; (iv) the inputs and assumptions underlying the discount rates ranging from 6.5% to 10.5%; (v) the

basis for assuming that pro forma combined entity would maintain a tangible common equity to tangible assets ratio of 8.00% and that pro forma entity would retain sufficient earnings to maintain that level; and (vi) the pro forma combined entity's estimated 2025 earnings.

43.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

48.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

49.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of CenterState within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of CenterState, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CenterState, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CenterState, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction.   The Individual Defendants were thus directly involved in the making of the Registration Statement.

54.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 17, 2020

OF COUNSEL:

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By:     */s/ Gina M. Serra*
        Brian D. Long (#4347)
        Gina M. Serra (#5387)
        300 Delaware Avenue, Suite 1220
        Wilmington, DE 19801
        Telephone: (302) 295-5310
        Facsimile: (302) 654-7530
        Email: bdl@rl-legal.com
        Email: gms@rl-legal.com

        *Attorneys for Plaintiff*